IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABN AMRO, Incorporated, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 3123 |
| v. | ) | |
| | ) | Hon. Mark Filip |
| Capital International Limited, | ) | |
| Eirles Four Limited, Deutsche | ) | |
| Bank Aktiengesellschaft, Sarco | ) | |
| Holdings and Dhananjay (Dan) | ) | |
| Hajela | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO STRIKE

Plaintiff, ABN AMRO, Inc. ("ABN") has filed an Amended Complaint ("Complaint")

against Deutsche Bank Aktiengesellschaft ("Deutsche Bank" or "DB"), Eirles Four Limited

("Eirles"), Capital International Limited ("Capital"), Sarco Holdings ("Sarco"), and Dhananjay

Hajela ("Hajela"), alleging securities fraud and other claims in connection with a chain of back-

to-back sales of secured notes issued by Eirles (the "Series 42 Notes" or the "Notes"). (*See* D.E.

85-1; D.E. 85-2; D.E 85-3.) ABN claims that Defendants' collective omission of material

information about the Series 42 Notes—specifically, that there was an absolute restriction on

their sale within the United States or to a U.S. person—led to ABN's purchase of the Notes, and

that ABN suffered $44 million in damages because of this omission. (D.E. 85-1 ¶ 7.) The

Complaint alleges violations of federal and state securities laws, common law fraud, violations of

the Illinois Consumer Fraud and Deceptive Business Practices Act, and other state law claims.

Deutsche Bank and Eirles on the one hand (also "DB/Eirles"), and Sarco and Hajela (also

"Sarco/Hajela") on the other, filed separate motions to dismiss, both for failure to state a claim

and for lack of personal jurisdiction. (*See* D.E. 126-1 (DB/Eirles Rule 12(b)(6) Memorandum and Exhibits); D.E. 129 (Eirles Rule 12(b)(2) Memorandum)[1]; D.E. 131 (Sarco/Hajela Rule 12(b)(6) Memorandum); D.E. 133 (Sarco/Hajela Rule 12(b)(2) Memorandum); and D.E. 134 (Sarco/Hajela Exhibits in support of their Rule 12(b)(6) and 12(b)(2) Memoranda).) Capital has filed an answer to the Complaint (D.E. 123) and therefore it is not discussed in this opinion.

Before the Court are (1) ABN's motions to strike documents and portions of the briefs in support of DB/Eirles' and Sarco/Hajela's motions to dismiss under Rule 12(b)(6); and (2) ABN's opposition to Sarco/Hajela's request to convert their Rule 12(b)(6) motion into a summary judgment motion. (*See* D.E. 142; D.E. 145.) ABN has also requested the Court to award it fees and costs incurred in preparing its motion to strike against Sarco/Hajela. Both sets of defendants have opposed ABN's motions to strike. (*See* D.E. 147; D.E. 148; *see also* D.E. 150 (ABN's reply memo), D.E. 153 (DB/Eirles sur-reply), D.E. 154 (Sarco/Hajela sur-reply).) For the reasons discussed below, ABN's motions to strike are granted in part and denied in part. The Court respectfully rejects Sarco/Hajela's suggestion to convert their motion to dismiss into a motion for summary judgment, and the Court denies ABN's request for fees

Any pending motions are stricken without prejudice. Defendants are free to refile memoranda that conform with this order within 2 weeks of this opinion. Plaintiffs have four weeks to respond, and Defendants will have two weeks to reply. If any motions are unaffected by this ruling, the movants are free simply to refile the prior version of their motion and brief.

---

[1] It does not appear that Deutsche Bank contends that it is not subject to personal jurisdiction here.

## FACTS

This case arose out of an alleged botched sale of the Series 42 Notes worth $105 million. (D.E. 85-1 ¶¶ 1, 5.)[2] The Notes were to be issued by Eirles and its issuing agent, Deutsche Bank, with Sarco acting as Deutsche Bank and Eirles' sales agent to arrange purchasers for the Notes. (*Id.* ¶ 1.) According to the original plan for the issuance, Eirles and Deutsche Bank were to issue the Notes to Capital, a broker-dealer in the Isle of Man, which was to distribute the Notes to ABN. (*Id.* ¶ 5.) ABN then planned to sell the Notes to its customer, Hopewell Capital Group, Inc. ("Hopewell"), which planned to sell them to Sterling Capital Management ("Sterling"), another U.S. broker-dealer, and other end purchasers. (*Id.*) Initially, ABN planned to act only as a clearing agent in the transaction. (*Id.* ¶ 3.) At Capital's insistence, however, ABN agreed to act as a principal for Hopewell, guaranteeing Hopewell's purchase of the Series 42 Notes, because neither Capital nor Hopewell could afford to finance the transaction. (*Id.*)

All parties to the transaction allegedly agreed that ABN would act as a "riskless principal," which meant it would serve only as a "pass through" for the Notes between Capital and Hopewell. (*Id.*) ABN expected its role to be minimal—allegedly little more than that of a clearing broker. (*Id.*) ABN's only interest in the transaction was the payment of a regular clearing fee. (*Id.*) ABN entered into a Principal Letter Agreement with Capital, which confirmed that the Series 42 Notes were exempted securities, and ABN also received copies of term sheets drafted by Deutsche Bank. (*Id.* ¶ 4.) None of the documentation ABN received regarding the Notes mentioned any restrictions on sale of the Notes. (*Id.*)

---

[2] The following facts are taken from the Complaint (D.E. 85). For present purposes, the Court accepts the allegations in the Complaint as true, as precedent instructs. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). The Court takes no position on whether any of the allegations are, in fact, well founded.

3

The Series 42 Notes were issued on July 15, 2003, and on that same day were distributed from Eirles and Deutsche Bank, through Capital, to ABN in a series of virtually simultaneous transactions. (*Id.* ¶ 5.) However, the remaining parties in the chain of distribution reneged on the deal, and ABN was left holding the Notes, for which it had paid $97.9 million. (*Id.*) Weeks after the deal fell through, while ABN was working with Hopewell and others to arrange for another buyer of the Notes, ABN received a copy of a Series 42 Supplemental Programme Memorandum, which governed the Series 42 Notes. (*Id.* ¶ 6.) ABN alleges that the original Programme Memorandum contemplated sales of the Notes in the United States. (*Id.* ¶ 9.) The Supplemental Memorandum, however, allegedly revealed to ABN for the first time that the Series 42 Notes were restricted from being "offered, sold, resold, delivered or transferred within the United States or to, or for the account or benefit of, U.S. persons." (*Id.* ¶ 6.) ABN alleges that it would not have participated in the transaction if it had been aware of this absolute restriction. (*Id.* ¶ 7.) After much difficulty, ABN ultimately sold the Notes for 47 cents on the dollar, resulting in a loss exceeding $44 million. (*Id.*)

ABN commenced this action against Eirles and Capital for alleged violations of Sections 5 and 12 of the Securities Act, among other claims. (*Id.* ¶ 8.) ABN also filed suit in state court against Hopewell, Sterling, and their principals. (*Id.*) During jurisdictional discovery in the federal case, ABN alleges it discovered a larger fraudulent scheme by Eirles, Deutsche Bank, Capital, Sarco, and Sarco's sole shareholder, officer, and director, Dan Hajela. (*Id.*) In its Amended Complaint, ABN alleges that, from the inception of the transaction to its completion, Eirles and Deutsche Bank, and their agents Capital and Sarco, engaged in a fraudulent scheme to distribute the Series 42 Notes into the United States without disclosing the relevant absolute prohibition on such distribution. (*Id.* ¶ 12.)

4

## LEGAL STANDARDS

Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored, because they potentially serve only to delay litigation. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A district court has broad discretion to grant or deny a motion to strike. *See, e.g., Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–65 (7th Cir. 1992). This motion to strike was filed in response to the Defendants' motions to dismiss, and it seeks to exclude documents attached to, and portions of, Defendants' briefs in support of their motions on the basis that those documents were not attached to or incorporated in the Complaint. Thus, ABN contends, the non-incorporated documents, and references to them, are not properly considered under a Rule 12(b)(6) analysis.

In response to an ordinary Rule 12(b)(6) motion, a court simply examines the allegations in the complaint to determine whether they pass muster. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990)). A court is not to consider documents or allegations extrinsic to the pleadings on a Rule 12(b)(6) motion. *Id.* The pleadings include the complaint, the answer, and any written instruments attached to the complaint as exhibits. *See, e.g.*, Fed. R. Civ. P. 7; Fed. R. Civ. P. 10(c); *Hirata Corp. v. J.B. Oxford and Co.*, 193 F.R.D. 589, 592 (S.D. Ind. 2000) (collecting cases).

If a district court considers matters outside the pleadings, the procedural rules require that "the motion shall be treated as one for summary judgment" under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b). When proceeding on such a converted motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.*

Consideration of outside matter without converting the Rule 12(b)(6) motion into a Rule 56 motion can produce reversible error. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1431 (7th Cir. 1996).

As discussed in greater detail below, however, precedent has crafted two exceptions to this general ban on material extrinsic to the complaint and any attachments thereto. First, a district court may consider documents attached to the motion to dismiss—but not to the complaint—if those documents are referred to in the complaint and central to the plaintiff's claim. *See, e.g., Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (collecting cases). Second, a district court may take judicial notice of matters of "public record" without converting a motion to dismiss into a motion for summary judgment. *See General Electric*, 128 F.3d at 1080 (collecting cases).

## DISCUSSION

### I. The Documents ABN Seeks to Exclude

ABN has moved to strike documents from both DB/Eirles' and Sarco/Hajela's Rule 12(b)(6) motions to dismiss. Because several of the documents appear as exhibits to both motions to dismiss, this opinion addresses both motions to strike together. ABN has moved to strike the following documents from DB/Eirles' Rule 12(b)(6) Motion to Dismiss:

1. *Exhibit J*, an undated settlement letter from Tom de Swaan of ABN to Clement Borsig of Deutsche Bank (D.E. 126-12);
2. *Group Exhibit C*, the Deutsche Bank-Capital, Capital-Hopewell, and Hopewell-Sterling purchase agreements ("the purchase agreements"), and a couple of fax pages (D.E. 126-5);
3. *Exhibit H*, a memorandum written by Anthony Long of Capital (D.E. 126-10); and
4. *Exhibit A*, the Illinois state court complaint filed in *ABN AMRO v. Hopewell Capital Group, et al* ("the state complaint") (D.E. 126-3).

(D.E. 142-1 at 2.)

ABN has also moved to strike the following documents from Sarco/Hajela's Rule

12(b)(6) Motion to Dismiss:

1. *Exhibit J*, the Deutsche Bank-Capital purchase agreement (D.E. 134-11);
2. *Exhibit K*, the Capital-Hopewell purchase agreement (D.E. 134-12);
3. *Exhibit L*, the Hopewell-Sterling purchase agreement (D.E. 134-13);
4. *Exhibit B*, ABN account documents of third-party ZAG LLC (D.E. 134-3);
5. *Exhibit C*, a principal letter agreement between ABN and Capital relating to the portion of Eirles notes purchased by third-party ZAG LLC (D.E. 134-4);
6. *Exhibit D*, fax sheets relating to the ZAG LLC transaction (D.E. 134-5);
7. *Exhibit A*, the state complaint (D.E. 134-2);
8. *Exhibit G*, excerpts of the deposition testimony of Michael G. Whelan of Eirles (D.E. 134-8);
9. *Exhibit I*, the deposition testimony of Robert S. Jersey (D.E. 134-10);
10. *Exhibit P*, a July 15, 2003, memorandum from Deutsche Bank to Eirles regarding the "Portfolio Credit Swap Transaction" (D.E. 134-17).

(D.E. 145-1 at 2.)

DB/Eirles have withdrawn Exhibits J and H from their motion to dismiss (*see* D.E. 147-1

at 1–2), so the Court need not address whether those documents should be struck from the record.

DB/Eirles' Group Exhibit C (D.E. 126-5) overlaps with Sarco/Hajela's Exhibits J, K, and L

(D.E. 134-11, 134-12, and 134-13)[3]; DB/Eirles' Exhibit A (D.E. 126-3) overlaps with

Sarco/Hajela's Exhibit A (D.E. 134-2) (both exhibits contain the state complaint). Thus, the

final list of contested documents includes the following:

1. the Deutsche Bank-Capital, Capital-Hopewell, and Hopewell-Sterling purchase agreements (D.E. 126-5[4]);

---

[3] Both sets of exhibits include the Deutsche Bank-Capital, Capital-Hopewell, and Hopewell-Sterling purchase agreements. While the sets of exhibits are not identical—they differ in font, layout, and in at least one case are signed by different parties—they are substantially the same.

[4] For clarity and consistency, the Court will cite to the purchase agreements as D.E. 126-5, which is where the agreements appear as an exhibit to DB/Eirles' motion to dismiss for failure to state a claim. The purchase agreements appear in substantially similar form at D.E. 134-11, 134-12, and 134-13, where they are attached as exhibits to Sarco/Hajela's motions to dismiss for

2.  the state complaint (D.E. 126-3[5]);
3.  Sarco/Hajela's Exhibits B, C, and D ("the ZAG documents") (D.E. 134-3, 134-4, 134-5);
4.  excerpts of the Whelan deposition (D.E. 134-8);
5.  the Jersey deposition (D.E. 134-10); and
6.  the July 15, 2003, memo from Deutsche Bank to Eirles (D.E. 134-17).

Instead of converting either motion to dismiss into a motion for summary judgment, the Court will, in accordance with precedent and as discussed in detail below, consider the purchase agreements only with respect to Defendants' motions to dismiss. These documents, though not attached to the Complaint, are referenced in the Complaint, and they are central to Plaintiff's claims. The Court will strike the fax transmittal sheets included with the purchase agreements in DB/Eirles' Exhibit C (D.E. 126-5 at 6–7), the ZAG documents, the Jersey and Whelan deposition testimony, the allegations from the state complaint, and the July 15 memo. These documents are not referenced in the Complaint, nor are they central to Plaintiff's claims. Moreover, they are not documents in the public record, so the Court may not take judicial notice of them, at least for the alleged truth of statements in them.

## II.  Exceptions to the Bar on Extrinsic Documents

The courts have crafted two exceptions to the rule that documents outside the pleadings are not to be considered on a motion to dismiss. These exceptions are discussed immediately below.

---

failure to state a claim and for lack of personal jurisdiction.

[5] The Court will cite to the state complaint as D.E. 126-3, which is where that complaint appears as an exhibit to DB/Eirles' motion to dismiss for failure to state a claim. The state complaint also appears at D.E. 134-2, as an exhibit attached to Sarco/Hajela's motions to dismiss for failure to state a claim and for lack of personal jurisdiction.

## A. Documents Referenced in the Complaint and Central to the Plaintiff's Claim

First, courts will consider documents attached to a motion to dismiss, but not to the complaint, where the complaint refers to those documents and they are central to the plaintiff's claim. *See Venture Associates*, 987 F.2d at 431; *accord, e.g., Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Some courts mention a third requirement: that the extrinsic documents be "concededly" or "undisputedly" authentic. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (dicta stating that the documents must be "concededly authentic"); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (citation omitted). The Seventh Circuit has explained that "this is a narrow exception aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). However, although "the usual example is a contract, in a suit for breach of contract," *Tierney*, 304 F.3d at 738, as discussed further below, courts sometimes consider non-contractual extrinsic documents on a motion to dismiss; in addition, sometimes courts consider such documents in non-contract cases. Because precedent teaches that the scope of this exception is uncertain, *see Tierney*, 304 F.3d at 739, the Court discusses it at some length.

### 1. Documents Pertinent to a Contract Claim

The clearest cases for admitting extrinsic documents on a motion to dismiss are those where the plaintiff's complaint alleges a breach of contract or some other contract-related claim, and the plaintiff does not attach the contract to the complaint. In such cases, defendants are allowed to attach the contract to their motion to dismiss, and the court is allowed to consider it as part of the pleadings. *See, e.g., Allstate Life Insurance Co. v. Peoplesoft, Inc.*, No. 03 C 7025,

2004 WL 1375383, at *2 (N.D. Ill. May 26, 2004) (collecting cases); *Hirata*, 193 F.R.D. at 592 (citing *Venture Associates Corp.*, 987 F.2d at 431).[6] Caselaw also reflects that courts sometimes allow consideration of extrinsic documents in the "chain of correspondence" leading up to the formation of a contract between the parties. *See Magellan International Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 923 (N.D. Ill. 1999); *see also id.* ("Though this Court is duty-bound at this stage of the game to look at the picture of the parties' transaction (as framed by their correspondence) through a lens most favorable to Magellan, it cannot do so by examining only half that picture in that light. . . . [I]t would be totally wasteful to uphold a claim on the false premise created by less than complete documentation when the delayed consideration of the remaining documents would lead to dismissal of that claim."). Likewise, in *Ken-Pin, Inc. v. Vantage Bowling Corp.*, No. 02 C 7991, 2004 WL 783092, at *2 (N.D. Ill. Jan. 20, 2004), the court allowed consideration of a letter offer in a breach of contract suit. The court reasoned that the letter was centrally relevant to the contractual claim and dispute between the parties, and therefore that it could be considered on the motion to dismiss. *Id.* The court in *Ken-Pin* also allowed consideration of two of Ken-Pen's employment contracts in connection with its claims against a competitor for tortious interference with those contracts, based on the competitor's hiring away of two of Ken-Pin's employees in violation of their non-compete agreements. *Id.*

---

[6] *See also, e.g., Lutheran General Hospital, Inc. v. Printing Industry of Illinois/Indiana Employee Benefit Trust*, 24 F. Supp. 2d 846, 848 n.3 (N.D. Ill. 1998) (holding that the court could consider a contract between the hospital and a third-party health-plan administrator in an ERISA claim for breach of that contract); *James v. Heartland Health Services*, No. 04 C 2744, 2005 WL 678732, at *6 (N.D. Ill. Jan. 28, 2005) (allowing consideration of a company handbook on a motion to dismiss where there were references to the "employee manual" in other counts of the complaint, and plaintiff had argued in her response to defendant's motion to dismiss that the manual created a contract).

## 2. Documents Pertinent to a Non-Contract Claim

Courts also sometimes consider contract documents in cases where the claims do not solely or strictly involve a contract dispute between the plaintiff and the defendant. For example, in *McCabe v. Crawford & Co.*, 210 F.R.D. 631 (N.D. Ill. 2002), the plaintiff sued a debt collection agency for violations of various consumer protection statutes after the agency sent him a letter attempting to collect on an old debt. *Id.* at 635. The debt stemmed from a car accident the plaintiff had been involved in while driving a rental truck without having purchased the rental company's additional vehicle loss and damage insurance. *Id.* at 635–36. The rental company unsuccessfully sought to collect payment for the damage to the truck and eventually turned the debt over to the defendant/debt collector. *Id.* at 635–36. In its motion to dismiss, the defendant attached the truck rental agreement, which provided that the "renter will also pay all direct costs of collection, including attorney fees, and interest at the highest rate permitted by law." *Id.* at 639. The court held that it was "permitted to consider the rental agreement attached to Crawford's motion to dismiss because it is implicitly and explicitly referred to in McCabe's complaint, . . . and but for the contract between Budget and McCabe, McCabe's claims would not exist." *Id.* at 639 n.4 (citing *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). *McCabe* further stated that, "[m]oreover, we will not allow McCabe to avoid dismissal under Rule 12(b)(6) by failing to attach the contract which proves that he has no claim." *Id.* (citing *Tierney*, 304 F.3d at 738); *accord Munoz v. Seventh Avenue, Inc.*, No. 04 C 2219, 2004 WL 1593906, at *2 (N.D. Ill. July 15, 2004) (allowing consideration of an entire catalog on a motion to dismiss plaintiff's Truth in Lending Act claim where plaintiff had attached only a page or two).

Furthermore, in some instances, courts have considered extrinsic documents in fraud cases such as the case at bar. In *Cortec Industries, Inc. v. Sum Holding L.P., et al.*, 949 F.2d 42 (2d Cir. 1991), a securities fraud case, the Second Circuit held that it was proper to consider such documents because the plaintiffs had notice of the documents and the documents were integral to their claim, even though those documents were not incorporated into the complaint by reference nor attached to it. *Id.* at 48. The documents included an offering memorandum describing the company, and a stock purchase agreement between one of the plaintiffs' subsidiaries and the selling defendants that contained representations and warranties about the company. *Id.* at 45. In their complaint, the plaintiffs had alleged that they would not have entered into the transaction to purchase the company "if not for defendants' repeated fraudulent or negligent representations and omissions concerning [the company's] financial condition, operations and prospects." *Id.* (internal quotation marks omitted). In allowing consideration of these documents, the court explained that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim . . . ." *Id.* at 47 (citing *I. Meyer Pincus and Assoc. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991)); *accord Romani v. Shearson Lehman Hutton, et al.*, 929 F.2d 875, 879 n.3 (1st Cir. 1991) (allowing consideration of a prospectus in a securities fraud claim).

*Cortec* focuses on ensuring proper notice to the plaintiff:

A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since . . . the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the

12

complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated. . . . Despite the fact that the documents attached to defendant['s] motion to dismiss were neither public disclosure documents required by law to be filed with the SEC, nor documents actually filed with the SEC, nor attached as exhibits to the complaint or incorporated by reference in it, the district court was entitled to consider them in deciding the motion to dismiss [because they] were documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit. It did not lack notice of those documents; these papers were integral to its complaint.

*Id.* at 48; *see also Tierney*, 304 F.3d at 738 (citing *Cortec*'s analysis of the notice issue). When

courts take notice of documents in cases such as securities fraud cases (or otherwise consider

them because they are central to the complaint), courts typically consider the documents for a

non-hearsay purpose—*i.e.*, for the notice that statements in the documents provided concerning

certain risks, as it relates to fraud or reliance questions—as opposed to for the substantive truth

of statements in the documents. *See, e.g., I. Meyer Pincus & Assocs.*, 936 F.2d at 762 ("Read in

context, the language . . . could not mislead any reasonable investor into believing that the Fund

was predicting a bright trading future for its shares. Indeed, we find the language remarkably

direct."); *Romani*, 929 F.2d at 879 ("The offering materials are replete with statements . . .

emphasizing the high risks . . . . Documents such as this, which clearly bespeak caution, are not

the stuff of which securities fraud claims are make.") (internal quotation marks and citations

omitted); *see also Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354–55 (7th Cir.

1995) (affirming trial court's refusal to consider contents of certain SEC filings as to the truth of

the matters asserted therein because they were subject to reasonable dispute).

## B.    The Second Exception: Judicial Notice of Matters of Public Record

The second exception permits the district court to take judicial notice of matters of public

record. *See General Electric Capital Corp.*, 128 F.3d at 1080. "A court may take judicial notice

of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally

known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* at 1081 (quoting Fed. R. Evid. 201(b)). The exemption applies to "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Id.* (quoting 5A Wright & Miller § 1357, at 299) (internal quotation marks omitted). Like the putative third prong of the first exception—that the extrinsic documents be "concededly" or "undisputedly" authentic—this second exception is for "undisputed fact[s]." *Id.* This exception "has allowed courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard." *Id.*; *see also Hennessy*, 69 F.3d at 1354 ("In order for a fact to be judicially noticed, indisputability is a prerequisite.").

Judicial notice is premised on the concept that certain facts exist which a court may accept as true without requiring additional proof from the opposing party or parties. "It is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *General Electric Capital Corp.*, 128 F.3d at 1081 (citing *York v. American Tel. & Tel. Co.*, 95 F.3d 948, 958 (10th Cir. 1996); and *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 865 (7th Cir. 1983)).

Judicial notice is most frequently used for noticing the contents of court records such as judicial orders or decrees. *See, e.g., Global Relief Foundation v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *4 (N.D. Ill. Sept. 11, 2002) (citing *General Electric Capital Corp.*, 182 F.3d at 1081). Typically, however, because of the indisputability requirement, the notice of a court order is limited to the purpose of recognizing the judicial act or litigation filing; judicial notice is generally not for the truth of the matters asserted in a court document. *Global*

*Relief Foundation*, 2002 WL 31045394, at *4 (citing *General Electric Capital Corp.*, 182 F.3d at 1081 n.6).

This Court must adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts. *See General Electric Capital Corp.*, 128 F.3d at 1081. Thus, for example, in *Global Relief Foundation*, the court took judicial notice of a complaint filed in a related case over the plaintiff's objection that facts in the complaint were disputable. *Global Relief Foundation*, 2002 WL 31045394, at *5. "The Court may . . . take notice of the fact that GRF filed a complaint against the government for the raiding of GRF's offices and the freezing of its assets." *Id.* However, the court declined to take judicial notice of documents filed by the government in the same related case. *Id.*; *accord Lum v. Bank of America*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("While a prior judicial opinion constitutes a public record of which a court may take judicial notice, it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion") (citation omitted); *Hennessy*, 69 F.3d at 1354–55.

## III.    Analysis of the Documents ABN Seeks to Exclude

### A.    The Purchase Agreements

DB/Eirles and Sarco/Hajela both attached to their motions to dismiss three purchase agreements for the sale of the Series 42 Notes, between Deutsche Bank and Capital, Capital and Hopewell, and Hopewell and Sterling. (*See* D.E. 126-5; D.E. 134-11; D.E. 134-12; D.E. 134-13.) DB/Eirles also attached a fax cover sheet and fax transmittal letter purporting to relate to the Hopewell-Sterling purchase agreement. (D.E. 126-5 at 6–7.) These purchase agreements were part of Deutsche Bank's required documentation for the sale of the Notes. (*See* D.E. 85 ¶ 87.) According to Defendants, each of these purchase agreements restricted U.S. sales of the Notes,

and ABN saw a copy of at least one of these agreements (the agreement between Hopewell and Sterling) before the Notes transaction closed. (*See, e.g.*, D.E. 126-1 at 12–13; D.E. 131 at 13.) Defendants use the purchase agreements in their motions to dismiss purportedly to show that ABN knew about the restriction on sale and that it was immaterial to ABN's decision to purchase the Notes. (D.E. 126-1 at 14; D.E. 131 at 14.)

ABN argues in its motions to strike that these purchase agreements should not be considered by the Court because they fail to meet the requirements of either exception to the bar on using materials extrinsic to the complaint. (D.E. 142-1 at 10; D.E. 145-1 at 5.) First, ABN appears to argue that it did not refer explicitly to the purchase agreements in its Complaint, and that a "general reference" in its Complaint to Deutsche Bank's "required documentation for the Series 42 Notes" is insufficient to find the purchase agreements incorporated by reference into the Complaint. (D.E. 142-1 at 11 (citing *Ninth Avenue Remedial Group v. Allis Chalmers Corp.*, 974 F. Supp. 684, 687 (N.D. Ind. 1997); *Hirata*, 193 F.R.D. at 594–95); D.E. 145-1 at 6 (same).) Next, ABN argues that, even if the Court were to determine that ABN "implicitly referred" to the purchase agreements in its Complaint, the Court still should not consider them because they are not indisputably authentic and they are not central to ABN's claims. (D.E. 142-1 at 11; D.E. 145-1 at 6.) According to ABN, the agreements "do not form the basis of any of ABN AMRO's claims against Defendants. Rather, ABN AMRO's claims are based on the fact that none of the documents to which ABN AMRO was a party or which Defendants published or distributed to ABN AMRO prior to the closing of the Series 42 Notes disclosed the Absolute Restriction." (D.E. 142-1 at 11 (citing *The Lincoln Nat'l Life Ins. Co. v. Donaldson, Lufkin & Jenrette Securities Corp.*, 9 F. Supp. 2d 994, 999 (N.D. Ind. 1998)); *see also* D.E. 145-1 at 6.)

ABN also argues that the purchase agreements do not fit the exception for documents in the public record because they are private documents and thus do not meet the requirement of indisputability. (D.E. 142-1 at 11 (citing *General Electric Capital Corp.*, 128 F.3d at 1084; *Ninth Ave. Remedial Group*, 974 F. Supp. at 687)); D.E. 145-1 at 6 (same).) ABN then denies having seen the Hopewell-Sterling purchase agreement before the closing (D.E. 145-1 at 11–12), and states that DB/Eirles's assertion to the contrary is based on the fact that the two pages immediately preceding that purchase agreement in DB/Eirles's Exhibit C (D.E. 126-5) consist of a fax confirmation page and a fax transmittal letter. "But it is impossible to determine whether the purchase agreement was in fact faxed with those fax pages, or whether the fax pages are associated with an entirely different document." (D.E. 142-1 at 12.) Further, ABN argues that DB/Eirles have distorted the facts by neglecting to inform the Court that the language in the purchase agreements differs from that of the absolute restriction on U.S. sales in the Supplemental Memorandum, such that even if ABN had seen the Hopewell-Sterling purchase agreement before closing, it would not have put ABN on notice of the restriction at issue. (*Id.*)

In response, DB/Eirles and Sarco/Hajela cite sixteen references to the purchase agreements in the Complaint (D.E. 147-1 at 5–8; *see also* D.E. 148 at 6 (citing seventeen separate references to the purchase agreements in the Complaint)), at least eight of which explicitly refer to "purchase agreements." DB/Eirles further argue that during jurisdictional discovery, ABN marked as exhibits and asked questions about the Deutsche Bank-Capital and Capital-Hopewell purchase agreements, "thus expressly authenticating those exhibits." (D.E. 147-1 at 4.)

Sarco/Hajela add that this exception to the ban on documents extrinsic to the complaint has been extended to documents "'central to the plaintiff's claims which were implicitly

incorporated into, although not explicitly referred to by, the complaint.'" (D.E. 148 at 4. (quoting *Hirata*, 194 F.R.D. at 593) (internal quotation marks omitted). Furthermore, Sarco/Hajela argue, the purchase agreements "are contract documents which were signed in connection with the Notes Transaction which is the subject of the Complaint. They set forth conditions relating to the Notes Transaction, including restrictions on sales to U.S. persons which pertain to a central issue in this case." (D.E. 148 at 5.) "The parties to these Purchase Letters are the Defendants in this case . . . and the Letters reflect the transfer of the Notes in a chain of transactions which is referred to throughout the Complaint." (*Id.* at 5–6.)

This Court agrees with Defendants that the purchase agreements may be considered on their motions to dismiss, because they are central to Plaintiff's claims and are repeatedly referred to in the Complaint. However, the Court excludes the fax letter and transmission sheet included with DB/Eirles' copies of the purchase agreements. The purchase agreements are further central to Plaintiff's claims because they establish the terms of the transactions specifically at issue in this case. *Accord, e.g. McCabe*, 210 F.R.D. at 639 n.4 (allowing consideration of a rental agreement between plaintiff and non-party truck rental company because the agreement was implicitly referred to in the complaint and, but for that agreement, plaintiff's claims would not exist). Plaintiff relies on *The Lincoln Nat'l*, 9 F. Supp. 2d 994, for the proposition that documents are not central to a claim if the "claims were based on misrepresentations contained in other documents." (D.E. 142-1 at 11 (citing *The Lincoln Nat'l*, 9 F. Supp. 2d at 999).) However, *The Lincoln Nat'l* only excluded documents that had not been referenced in the complaint; it considered another document that *had* been referenced in the complaint. *See The Lincoln Nat'l*, 9 F. Supp. 2d at 998. Unlike the plaintiff in *The Lincoln Nat'l*, ABN refers to the purchase agreements repeatedly in the Complaint. (*See, e.g.*, D.E. 85 ¶¶ 89, 126, 129, 132 (references to

18

the Deutsche Bank-Capital purchase agreement); *id.* ¶¶ 93, 140, 143 (references to the Capital-Hopewell purchase agreement); *id.* ¶ 87 (reference to the Hopewell-Sterling purchase agreement).) The purchase agreements are, in the context of this case, central to Plaintiff's claims. Furthermore, although Plaintiff argues that the agreements are unauthenticated, Plaintiff does not assert that they are inauthentic. *See Sa'Buttar Health & Medical, P.C. v. TAP Pharmaceuticals, Inc.*, No. 03 C 4074, 2004 WL 1510023, at *3 (N.D. Ill. July 2, 2004) (citations omitted).

### B. The State Complaint

Shortly after ABN filed its initial federal complaint in this case, it filed a state court complaint against its customers Hopewell, Sterling, and others for, *inter alia*, breach of contract, promissory fraud, and conspiracy in relation to Hopewell's failure to purchase the Series 42 Notes. (*See* D.E. 142-1 at 14.) The state complaint seeks damages from downstream purchasers, or persons involved with the placement of the Series 42 Notes downstream. (*Id.*) Both sets of Defendants attach and cite the state complaint in their motions to dismiss in support of their claim that their conduct could not have caused ABN's damages if Hopewell and the other state defendants instead were responsible for those damages. (*See, e.g.*, D.E. 126-1 at 11 ("Therefore, by ABN's own admission, any loss suffered by ABN by reason of its acquisition of the Notes flowed directly from its interaction with Hopewell.") (citing state complaint); *id.* at 27–28 ("ABN went forward with the transaction based solely on Hopewell's assurances that it had a buyer for the Notes. . . . ABN, however, was not able to consummate a sale because Hopewell 'reject[ed] bona fide purchasers of, and purchase offers for, the Series 42 Notes.'") (quoting state complaint); D.E. 131 at 10 ("Thus, AAI took the position in its Hopewell Complaint that it was Hopewell's misrepresentation of its capacity to secure payment of the Notes and Hopewell's

failure to deliver the funds for the $105 million portion of the Notes Transaction that was the direct and proximate cause of the loss it incurred as a result of the Notes Transaction.") (citing state complaint.)

ABN argues that the state complaint is not referred to in the Complaint, nor is it central to ABN's claims. (*See* D.E. 142-1 at 15.) ABN further argues that the state complaint is not judicially noticeable under Fed. R. Evid. 201(b), because it is subject to reasonable dispute. (*See id.*)

DB/Eirles respond that there is no requirement that the allegations in a complaint (as opposed to judicial findings of fact) be undisputed (*see* D.E. 147-1 at 9), adding, however, that the Complaint *is* authentic and that ABN does not argue otherwise. DB/Eirles argue that the Court may take notice "not only of the judicial act (that [sic] fact that plaintiff had filed a related complaint), but also of the basis of the allegations contained in the complaint." (*Id.* (citing *Global Relief Foundation*, 2002 WL 31045394, at *5).) DB/Eirles point out that *General Electric Capital Corp.*, ABN's primary "judicial notice" case in its motion to strike, is about taking notice of judicial findings of fact, not allegations in a complaint. (D.E. 147-1 at 9.)[7]

Sarco/Hajela echo DB/Eirles's arguments regarding the lack of an indisputability requirement for taking notice of the state complaint. (*See* D.E. 148 at 9.) They cite to a series of cases from the Southern District of New York for the proposition that "a court may take judicial

---

[7] DB/Eirles go on to cite a series of cases where the court considered EEOC charges not attached to a plaintiff's complaint, but at least two of these cases are not "judicial notice" cases; the courts in question considered the extrinsic documents not because they were in the public record but because they had been referred to in the complaint and were central to the plaintiff's claim. *See Shannon v. Hotel Employees and Restaurant Employees Int'l Union*, No. 01 C 9711, 2003 WL 1338457, at *1 (N.D. Ill. March 18, 2003); *Ruff v. Guardsmark, Inc.*, No. 02 C 1381, 2002 WL 31761408, at *2 n.1 (N.D. Ill. Dec. 10, 2002).

notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action." (*Id.* (quoting *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 365 n.4 (S.D. N.Y. 2005) (internal quotation marks omitted).) Sarco/Hajela further argue that the state complaint fits the first exception because it is "clearly central" to ABN's claims: the state complaint seeks to recover the same losses that ABN is seeking in this case. (D.E. 148 at 9.) Moreover, Sarco/Hajela argue, ABN "makes direct and explicit reference to the litigation in which the Hopewell Complaint was filed . . . and refers to that litigation as 'parallel.'" (*Id.* (citing D.E. 85-1 ¶ 8).) ABN responds that the Complaint's "passing reference" to the Hopewell litigation is insufficient to argue that it is "referred to" in the complaint. (D.E. 142-1 at 14 n.14.)

With respect, Defendants appear to elide the hearsay aspect of taking judicial notice of another court's records. As discussed in Part II.B. above, the Court may take judicial notice of the fact that Plaintiff filed a complaint in a related state court action, but the Court may not take notice of the facts alleged in the complaint for the truth of the matters asserted. *See, e.g., Global Relief Foundation*, 2002 WL 31045394, at *5; *General Electric Capital Corp.*, 128 F.3d at 1082; *Baloun v. Williams*, No. 00 C 7584, 2002 WL 31426647, at *1 n.1 (N.D. Ill. Oct. 25, 2002). The state complaint is a source "whose accuracy cannot be reasonably questioned," in the sense that the document filed in the state court can be reliably assumed to be irrefutable proof that a complaint was actually filed. The state complaint therefore satisfies the first requisite of Fed. R. Evid. 201(b). However, the facts alleged in the state complaint are disputed, and therefore they do not meet the second requisite of Fed. R. Evid. 201(b). Although the Seventh Circuit has qualified the rule in *General Electric Capital Corp.* with the caveat that "it is conceivable that a finding of fact may satisfy the indisputability requirement of Fed. R. Evid. 201(b)," *see id.*, 128

F.3d at 1082 n.6, as in that case, that requirement has not been met here. Despite Defendants' arguments to the contrary, the indisputability requirement does appear to apply equally to complaints and other pleadings as it does to "findings of fact." *See* 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure Evidence* 2d § 5106.4 ("It seems clear that a court cannot notice pleadings or testimony as true simply because these statements are filed with the court. . . . However, it is proper to notice pleadings or testimony for some nonhearsay purpose.") (collecting cases).

Defendants also assert that the state complaint can be considered simply as an admission of a party opponent. That statement is true, but considering admissions is normally the stuff of summary judgment analyses, and not the stuff of Rule 12(b)(6) review. As explained further in Part IV below, the Court respectfully declines to put this case into a Rule 56 posture—a step that would be of only academic consequence in many respects anyhow, as Plaintiff has not been permitted merits discovery and seemingly would be entitled to such discovery under Fed. R. Civ. P. 56(f), so few, if any, efficiency gains seemingly would be realized.

In addition, the ability to consider the state complaint as an "admission" would not be conclusive. The parties ignored this subject in their briefs, so the Court will not speak definitively in the absence of adversarial briefing. However, the Court notes that even if Plaintiff had made the statements Defendants ascribe to it (via the state complaint) in an earlier complaint in this very case, that would seemingly not end the analysis. That is true because when a litigant files an amended complaint or counterclaim, the allegations in the prior pleading are superseded and are no longer operative, even in the case where the initial filing occurred. *See, e.g., Duda v. Bd. of Educ. of Franklin Park*, 133 F.3d 1054, 1057 (7th Cir. 1998) ("Once an amended pleading is filed, it supersedes the prior pleading. The prior pleading is in effect withdrawn as to all

22

matters not restated in the amended pleading, and becomes *functus officio*.") (collecting cases; internal citations and quotation marks omitted). Relatedly, statements or putative admissions in prior pleadings are generally understood to have only evidentiary, as opposed to conclusive force, and therefore cannot estop the pleader from ever pleading to the contrary. *See, e.g., Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632, 640 (7th Cir. 2004) (collecting authorities). Thus, even if statements in the state court complaint can be properly considered for a non-hearsay purpose, that consideration will await summary judgment analysis in this case.[8] These documents are excluded for purposes of the Rule 12(b)(6) motions.

## C.   The ZAG Documents

ABN also moves to strike documents (and references to those documents) from Sarco/Hajela's motion to dismiss relating to a transaction between ABN and ZAG LLC ("the ZAG documents"). (D.E. 145-1 at 7; *see also* D.E. 134-3, 134-4, 134-5.) The ZAG transaction involved ZAG's purchase of $10 million worth of Series 42 Notes through ABN; this was apparently the only portion of the $115 million Notes transaction at issue that went through to completion as at least ABN allegedly anticipated. (*See* D.E. 131 at 10.) Sarco/Hajela use the ZAG documents to attempt to show that Sarco/Hajela had nothing to do with ABN's damages.

---

[8] Defendants contend, at least at times, that the statements in the state complaint are sworn statements. If by that Defendants contend that the state complaint is a verified complaint, that appears to be an erroneous assertion. The Court's review of the proffered state complaint (*see* D.E. 126-3 (Exhibit A); D.E. 134-2 (Exhibit A)) reveals that it was not signed by the Plaintiff (as opposed to by one of its attorneys, who clearly does not have personal knowledge of all the matters stated therein) and it contains no apparent affidavit or sworn verification by a representative of Plaintiff. If the state complaint ever has been filed in verified form, that may limit or preclude the Plaintiff from disclaiming its representations (*e.g.*, in a summary judgment posture), although in any event there would still appear to be a legal and/or factual question that would potentially need to be resolved concerning the issue of proximate cause or causes within the context of this case.

They argue that, had ABN received payment from Hopewell for the remaining $105 million in Notes, as ABN had from the third-party ZAG, ABN would have suffered no loss. (*Id.*) ABN argues that the ZAG documents should be excluded from Sarco/Hajela's motion to dismiss because they do not meet the requirements of either of the two exceptions discussed above. (D.E. 145-1 at 7–8.)

Sarco/Hajela respond that the ZAG transaction was not "just another sale of the Notes; it was part and parcel of the very same $115 million transaction involving the Notes which [ABN] purchased and which is the subject of the Complaint." (D.E. 148 at 7.) Sarco/Hajela argue that the fact that the ZAG transaction was completed undermines two elements of ABN's fraud claims: the materiality of the alleged omission and loss causation. (*Id.*) Sarco/Hajela further argue that ABN cannot assert that it suffered a loss because the absolute sale restriction prevented ABN from selling the Notes through a broker-dealer in the United States, when the ZAG transaction was consummated via two U.S. broker-dealers—ABN and Hopewell. (*Id.* (citing D.E. 85 ¶ 209).)

The Court agrees with Plaintiff that the ZAG documents should not be considered on Sarco/Hajela's motion to dismiss. Unlike the purchase agreements underlying the transaction, without which there would be no claim, the ZAG documents are not "central" or "integral" to Plaintiff's claims. Furthermore, unlike the purchase agreements, ABN does not refer to the ZAG documents anywhere in the Complaint—these documents are not necessary to state a claim. It follows that they are extrinsic to the Complaint and should not be considered on a motion to dismiss.

### D. Excerpts of the Whelan Deposition and the Jersey Deposition

ABN moves to strike deposition testimony from Sarco/Hajela's motions to dismiss. (D.E. 145-1 at 10–11.) Sarco/Hajela cite the deposition of Michael Whelan, an Eirles director, who testified that prior to the settlement of the Notes Transaction, the Supplemental Memorandum including the absolute restriction on sale had not been distributed to anyone other than Eirles' directors and legal advisors. Sarco/Hajela cite this testimony to show that they were not aware of the absolute restriction before the closing and therefore could not have had the scienter required for ABN's fraud claims. (D.E. 131 at 11.) Sarco/Hajela also cite the deposition of Robert Jersey, an ABN executive, who testified that he had received the original Programme Memorandum governing the Notes transaction but did not review it carefully before the closing. Sarco/Hajela use this testimony to attack ABN's allegations of reasonable reliance. (*Id.* at 12.) Sarco/Hajela add that Whelan and Jersey are both "mentioned in the Complaint." (*Id.* at 11–12.) ABN argues that this deposition testimony is not referred to in the Complaint, is not "indisputably authentic," and is not central to ABN's claims. Moreover, ABN asserts that the deposition testimony does not meet the requirements of Fed. R. Evid. 201(b), and therefore that the Court may not take judicial notice of it.

The Court agrees with ABN that it is inappropriate to take judicial notice of deposition testimony for purposes of a Rule 12(b)(6) motion, at least when that testimony is not part of the record in a case, and particularly not for the truth of the matters asserted therein. *See Unity House, Inc. v. First Commercial Financial Group*, No. 96 C 1716, 1997 WL 282725, at *5 (N.D. Ill. May 19, 1997); *Lum*, 361 F.3d at 222 n.3. Therefore, it is only appropriate to consider the deposition testimony in question if ABN referred to the testimony in its Complaint and the testimony is central to ABN's claims. ABN, of course, has not included averments in its

operative complaint that parallel the putative admissions that Sarco/Hajela would seek to draw from the Whelan deposition; otherwise, there would be no need for Sarco/Hajela to attempt to interject the deposition testimony into the Rule 12(b)(6) analysis. In addition, while ABN made a couple of passing references to testimony of Mr. Whelan in its Complaint, those references are unrelated to the substance of the putative admissions Sarco/Hajela would seek to have considered under Rule 12(b)(6). Sarco/Hajela offers no authority, and the Court is not aware of any, that suggests that the mere fact that portions of a complaint are based on or reference aspects of a witness's deposition thereby renders that witness's entire deposition, including his or her testimony on subjects materially discrete from those referenced in the complaint, fair game for purposes of the Rule 12(b)(6) analysis. The Court therefore respectfully declines to include the putative Whelan admissions in its Rule 12(b)(6) analysis.

The Jersey deposition is not referred to in the Complaint. The Court agrees with ABN that mere mention of a person's name is insufficient to incorporate that person's deposition in a complaint. The Court will not consider the Jersey deposition for purposes of Rule 12(b)(6) review.

### E.     The July 15, 2003, Memo from Deutsche Bank to Eirles

Finally, ABN moves to strike Sarco/Hajela's references to a July 15, 2003, memo from Deutsche Bank to Eirles. (D.E. 145-1 at 11.) Sarco/Hajela use the memo to describe the function of the portfolio underlying securities for the Notes, and to help explain their role in monitoring that portfolio. (D.E. 148 at 11.) Sarco/Hajela argue that ABN refers to this document in the Complaint explicitly several times (*see id.*), but the references cited do not clearly refer to this particular memo. Moreover, this memo, unlike the purchase agreements

discussed above, is not central to ABN's claims. Therefore, the Court strikes references to it in Sarco/Hajela's motions to dismiss.

## IV. The Court Respectfully Declines to Convert Certain Rule 12(b)(6) Motions to Rule 56 Motions

A district court has discretion to convert a Rule 12(b)(6) motion into a Rule 56 summary judgment motion. *See* Fed. R. Civ. P. 12(b)(6); see also D.E. 148 at 11 (Sarco/Hajela's acknowledgment that a district court "may, in its discretion, decline to convert a motion to dismiss into a summary judgment motion"). If a court exercises such discretion, Rule 12(b)(6) specifies that all parties thereafter "shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Relatedly, Fed. R. Civ. P. 56(f) provides that the summary judgment non-movant may, if appropriate, seek additional discovery so as to respond to a summary judgment motion.

This Court generally does not convert Rule 12(b)(6) motions into Rule 56 motions. Such a conversion can be appropriate in some circumstances; however, often the conversion simply leads to an extended discovery period and the eventual withdrawal and reframing of the summary judgment motion, because discovery typically reveals relevant information that the movant needs to incorporate and address.

In this case, there has been no merits discovery because of the discovery stay provisions of the PSLRA. *See* 15 U.S.C. § 77z-1(b)(1). It would be, at best, awkward to attempt to resolve the viability of the case as against Sarco/Hajela without allowing Plaintiff merits discovery on at least certain issues. Moreover, certain of the co-Defendants of Sarco/Hajela, namely Deutsche Bank and Eirles, do not wish to lift any discovery stay and proceed to Rule 56 review.

Under the circumstances, the Court respectfully declines the Sarco/Hajela invitation to convert its Rule 12(b)(6) motion into a Rule 56 motion. Those defendants, of course, will be able to file a Rule 56 motion, if appropriate. However, the most prudent time for review of such a motion will be after the conclusion of discovery, in conjunction with the review of any other summary judgment motions filed by the various Defendants—assuming Plaintiff survives any properly framed Rule 12(b)(6) motions and prevails on any Rule 12(b)(2) challenges at the threshold.

## V.    ABN's Request for Attorney's Fees Is Denied

ABN has requested that the Court award it the fees and costs that it has incurred in preparing its motion to strike against Sarco/Hajela. (D.E. 145-1 at 3.) ABN does not cite authority, statutory or otherwise, granting the Court discretion to award fees in these circumstances.

Even if the Court has such discretionary authority, the Court would decline to exercise it. Plaintiff has chosen to file a 150+ page complaint, which traverses vast areas of commercial interactions. While the Court has determined that some of the exhibits Defendants offer cannot properly be considered in a Rule 12(b)(6) analysis, the proffering of the documents is nowhere near sufficiently egregious or manifestly erroneous that fee-shifting would be appropriate. This is particularly true given that the litigants in this case, including Plaintiff, include some of the most successful and well-resourced financial institutions in the world. Plaintiff, like most (if not all) of the Defendants, is among the least likely of litigants to be deterred from pursuing its rights because of the garden-variety costs of motion practice in commercial litigation. For all of these reasons, the Court respectfully denies the request for fees.

## CONCLUSION

For the reasons given above, the Court grants in part and denies in part the motions to strike. The parties should proceed on the briefing schedule outlined herein.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 3/16/07